FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

99 MAR -5 AM 11:44

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| LARRY GLENN GOLDEN and <br> PHILLIP E. HERNDON, <br><br> Plaintiffs, <br><br> v. <br><br> CRAVEN CROWELL; JOHNNY H. HAYES; <br> WILLIAM H. KENNOY, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION NO. 97-PWG-0579-S <br> ) <br> ) <br> ) <br> ) <br> ) |

ENTERED

MAR - 8 1999

MEMORANDUM OPINION

This matter is before the court on the motion for summary judgment filed by defendants Craven Crowell, Johnny H. Hayes and William H. Kennoy.[1/] Defendants are members of TVA's Board of Directors and are sued in their official capacities. The parties have consented to the exercise of the magistrate judge's jurisdiction pursuant to 28 U.S.C. § 636(c)(1). (Documents #41 and #42).

Plaintiff Golden's remaining claim is that defendants discriminated against him based on his sex in eliminating his Project Control specialist, SD-4, position by reduction-in-force. Plaintiff Herndon contends that he was discriminated against based on his sex when he was not considered for one of sixteen Project Control Engineer (Scheduler), SC-4, positions.

Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex*

---

[1/]   The Tennessee Valley Authority (TVA) was previously dismissed as a party defendant. (Document #40).

*Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circum-stances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

A. <u>Golden's RIF Claim</u>

The following facts are not disputed. (Plaintiff's Response, document #50). On May 19, 1995 the Business and Work Performance (BWP) organization at Browns Ferry Nuclear Plant

(Browns Ferry) advertised in Vacant Position Announcement (VPA) No. 9350 that it would fill eight or more Project Control Engineer (Scheduler), SC-4, positions. BWP filled sixteen such positions.

Golden applied for one of the sixteen Project Control Engineer (Scheduler), SC-4, positions. VPA No. 9350 was part of a reorganization of the various Browns Ferry scheduling disciplines as the construction of Unit 3 was coming to a close. Browns Ferry was entering the operational phase of Unit 3, the reorganization of the various scheduling disciplines was necessary to cut costs, to combine all scheduling under one department, and to increase the efficiency and effectiveness of preoutage and outage scheduling at Browns Ferry.

Golden was initially selected for one of the sixteen positions. However, two male candidates filed grievances under their collective bargaining agreement challenging the selections. The grievants prevailed. As a result, Golden learned on September 18, 1995, that he was deselected and was replaced by one of the grievants.

Based on workforce planning projections, on September 20, 1995, Golden received written notification informing him that his Project Control Specialist, SD-4, position had been "identified as at-risk" and was targeted for surplus during the second quarter of fiscal year 1996 and that he would be reassigned to TVA's Services (TVAS) organization. Golden was reassigned to TVAS on March 29, 1996. With the exception of three male candidates, every employee–male and female–who applied on VPA No. 9350 and was not selected also received an "at-risk" notice and was reassigned to TVAS.[2]

---

[2] TVAS was created in 1994 as a temporary organization designed to give employees whose positions were slated to be eliminated an opportunity to search for other work and/or to develop additional skills which might help to move career employees, like plaintiffs, from their previous occupations or positions to new occupations or positions for service within and outside of TVA. This transition sometimes involved training and learning new skills. In other cases, TVAS utilized an employee's current skills and knowledge to aid one or more organizations within TVA.

3

On July 24, 1996, while plaintiff Golden was still in TVAS, TVA issued a RIF (reduction-in-force) notice to Golden advising him that his position would be eliminated as of September 30, 1996. Golden was informed in his RIF notice that his position was being RIFed "due to a shortage of funds." Every candidate–male and female–who applied on VPA No. 9350 and who was assigned to TVAS, but did not find a position while in TVAS, was issued a RIF notice.

Golden testified during his December 9, 1997, deposition that his RIF notice was the result of his allegedly discriminatory September 1995 nonselection on VPA No. 9350. (Golden deposition at pp.44-45). Golden's nonselection claim was dismissed from this action because Golden failed to exhaust his administrative remedies with regard to the non-selection claim. (Documents #36 and 37).

Although plaintiff Golden does not dispute the above facts, he does not concede that defendants are entitled to summary judgment. Rather, he relies upon his position as stated in attachment A to the Agreed Pretrial Order (document #40):

> Plaintiff Golden contends that the Vacant Position Announcement (VPA) 9530 and the ensuing selection process was nothing but a subterfuge engaged in by the managers over TVA's Browns Ferry Business and Work Performance department. Plaintiff Golden contends that the scheduling job he had still exists, that only the name has changed, and that his job is now being performed by a female with less seniority. Plaintiff Golden contends that the selection process should be disregarded because it was a subterfuge for replacing male schedulers with females. He is a member of a protected category, he was adequately performing his job, he was displaced by reduction-in-force on September 30, 1996, and his job was given to a woman with less seniority and no better qualifications. Plaintiff Golden contends that the creation of the 16 Project Control Engineer

4

(Scheduler), SC-4, VPA 9530 positions, the selection process, and the elimination of his SD-4 position were all part of a plan to replace male schedulers with female schedulers. Plaintiff Golden contends that TVA's proffered reasons for eliminating the SD-4 position he held–a restructuring of Brown's Ferry's Business and Work Performance department and shortage of funds–are pretextual, as evidenced by the disclosed preference points accorded the women selectees, the preferential grading accorded the women selectees, the use of subjective forced ranking for male applicants, the subsequent reclassification of the job back to what it was, and the lack of real change in the work being done. Plaintiff Golden contends that his RIF claim is not moot because he now makes a lot less money now than he was making.

In an employment discrimination case involving a RIF action, plaintiff Golden must prove each of the following elements in order to establish a *prima facie* case of sex discrimination

(1) that he was a member of a protected class and was adversely affected by an employment decision;

(2) that he was qualified for his current position or to assume another position at the time of his discharge; and

(3) that evidence exists by which a factfinder could conclude that the employer intended to discriminate on the basis of sex in reaching the decision at issue.

*Benson v. Tocco, Inc.*, 113 F.3d 1203, 1208 (11th Cir. 1997); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990); *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045-46 (11th Cir. 1989). Plaintiff Golden has failed to present any evidence whatsoever that defendants intended to discriminate on the basis of sex in issuing plaintiff Golden a RIF notice. As previously noted, men and women alike who were not selected for the SC-4 position and who did not find jobs

5

while in TVAS were issued RIF notices. To the extent that plaintiff relies on evidence concerning his nonselection, in order to attempt to prove a *prima facie* case of discrimination, the court should not consider such evidence. The nonselection claim was dismissed based on plaintiff's failure to exhaust his administrative remedies. Defendants' motion for summary judgment is due to GRANTED with respect to plaintiff Golden's RIF claim.

B.   <u>Herndon's Nonselection Claim</u>

It is undisputed that plaintiff Herndon was one of thirty-seven candidates for sixteen SC-4 positions. It is further undisputed that plaintiff Herndon was not considered for the position on grounds that, *inter alia,* he was a manager. One of the women selected for the position, however, was also a manger. Plaintiff Herndon must prove each of the following elements in order to establish a *prima facie* case of sex discrimination based on his nonselection:

(1)   that he was a member of a protected class;

(2)   that he was qualified for and applied for the position advertised;

(3)   that he was rejected in spite of his qualifications; and

(4)   a person outside of his protected class, with similar or less qualifications was selected.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998). Plaintiff, a male, applied for the SC-4 position; he was qualified for the advertised position; however he was not considered for the job. Equally or less qualified females were not only considered but selected for the position. Plaintiff has shown a *prima facie* case of sexual discrimination which carries with it a presumption that TVA unlawfully discriminated against him.

6

Because plaintiff has established a *prima facie* case of discrimination, the burden shifted to defendants to articulate legitimate nondiscriminatory reasons for the actions. *McDonnell Douglas*, 411 U.S. at 802. Defendants state that the selecting official, Ron Hogue, chose not to consider Herndon because:

1. He was a former manager.

2. He was not a Unit 3 Recovery employee like Vanessa Range. Ms. Range was one of the female applicants. Like Mr. Herndon, she was also a manager. She was both considered and hired. TVA says she was considered because she was one of the employees in Unit 3 Recovery at Browns Ferry, and at the time VPA no. 9350 was posted Browns Ferry managers had been given a directive to consider Unite 3 Recovery employees for vacant positions on which they applied because they had served a vital role in the recovery and brining on line of Unit 3 and had worked themselves out of a job.

3. He had a poor working relationship with the employees that he supervised.

4. His group had a considerable amount of dissension, primarily stemming from his inconsistent direction, lack of feedback, and failure to communicate and share information.

5. His subordinates did not respect him as a manager.

6. There was friction between Herndon and some of his subordinates.

7. He did not perform well in his previous Outage Scheduling Supervisor PG-8 position.

8. As a manger he did not produce a workable integrated system schedule. According to TVA, the product was the result of an incomplete knowledge of system interfaces which are of primary concern in building an outage schedule. His strength was in the area of construction activities.

Because defendants rebutted the presumption of discrimination, the burden then shifted to plaintiff to establish that the offered explanations for defendants' refusal to consider him were pretextual. *McDonnell Douglas*, 411 U.S. at 804.

There is a material issue of fact as to whether the reasons are pretextual. Immediately following the selection plaintiff was told only that he was not considered because he was a manager.

7

This has not been disputed by defendants. Ms. Range was also a manager and was considered (and selected) for one of the positions. Since the litigation began, defendants have articulated a myriad of reasons that they did not consider plaintiff; however, the defendants advised plaintiff of only a single reason he was not considered for the SC-4 position. All five qualified females[3] were selected including Ms. Range, who was also a manager. A finder of fact may find the subsequent reasons for nonselection to be pretexual. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1528-1532 (11th Cir. 1977), *relying on Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).

Based on the foregoing the defendants' motion for summary judgment is due to be DENIED with respect to plaintiff's Herndon's nonselection claim. A separate order and final judgment consistent with this memorandum opinion will be entered simultaneously herewith.

DONE this the 5th day of March, 1999.

_____
PAUL W. GREENE
UNITED STATES MAGISTRATE JUDGE

---

[3] The eight qualified males were then "forced ranked" and two failed resulting in only six of the qualified males being selected.